Filed 9/15/22  In re S.K. CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re S.K. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080421 |
| Petitioner and Respondent, | (Super. Ct. Nos. J520935A-B) |
| v. | |
| B.K. et al., | |
| Defendants and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant B.K., Father.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant V.Z., Mother.

Claudia Silva, Acting County Counsel, and Caitlin E. Rae, Chief Deputy County Counsel, for Plaintiff and Respondent.

I.

INTRODUCTION

V.Z. (Mother) and B.K. (Father) appeal a juvenile court's jurisdiction and disposition orders removing their minor children, A.K. and S.K., from parental custody. Mother and Father's sole complaint on appeal is that the San Diego County Health and Human Services Agency (Agency) failed to conduct an adequate initial inquiry into the children's potential Native American ancestry, as required by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.). The Agency concedes that its initial inquiry was deficient but contends this error was harmless.

We agree that the Agency failed to conduct a sufficient initial inquiry under ICWA and that this was error. The Agency was statutorily required to ask maternal grandmother, maternal aunt, and stepmother about the children's potential Native American ancestry.

We do not agree with Mother and Father, however, that this error was prejudicial. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*).) Rather, we conclude that because asking these family members about the children's potential Native American ancestry is unlikely to "bear meaningfully" on the question of whether the children are Indian children under ICWA, the error was harmless. (*Id.* at p. 744.) Maternal grandmother all but answered this question when she told the Agency that she was from Russia and had no other family in the United States. Mother and Father's fantastical theory that maternal grandmother's relatives could have visited California in the 1800's when Russia laid claim to certain parts of California, born children with one or more Native Americans, and then taken those children to Russia is unpersuasive. Indeed, Mother, herself, has consistently and repeatedly denied any Native American ancestry on her

2

side. For the same reasons, inquiry of maternal aunt—who lives with maternal grandmother—is also unlikely to shed meaningful light on whether the children are Indian children under ICWA. As to the children's stepmother, there is no indication in the record that she could provide pertinent information on this topic, particularly in light of Father's and paternal grandparents' consistent denials of any Native American ancestry on their side. Therefore, we affirm.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In January 2022, the Agency petitioned the juvenile court under Welfare and Institutions Code[2] section 300, subdivision (b)(1) on behalf of newborn A.K. The Agency alleged that Mother admitted using numerous illegal drugs during her pregnancy with A.K.; that after A.K. was born, Mother and Father tested positive for drugs including benzodiazepines, cocaine, and methamphetamine; that newborn A.K. was hospitalized for severe drug withdrawal symptoms; and that Father had a criminal history for drug-related offenses.

In the Agency's detention report regarding A.K., the social worker noted that Mother and Father both denied any Native American ancestry. The social worker also noted that Father sent a text message to the Agency in which he claimed, among other things, that his children "live[d] in [*sic*] extremely lavish life full of love they have all of their grandparents all of

---

[1]    Because Mother and Father's only contention on appeal concerns ICWA, we limit our factual background accordingly.

[2]    Further undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

their aunts and uncles brothers and sisters mothers and fathers . . . ." Father did not provide names or contact information for these alleged relatives.

In the Agency's jurisdiction/disposition report regarding A.K., the social worker referred the court to its prior detention report and stated that ICWA did not apply.

At the February 2022 jurisdictional hearing regarding A.K., the juvenile court asked Mother and Father directly if they had any Native American ancestry. They both said that they did not. The court then found without prejudice that ICWA did not apply.

In March 2022, the Agency again petitioned the juvenile court under section 300, subdivision (b)(1)—this time, on behalf of two-year-old S.K. The Agency alleged that Mother and Father were arrested for being under the influence of narcotics and possessing narcotics with intent to sell, and that S.K. was found in Mother and Father's car within reach of drugs and ammunition.

In the Agency's detention report regarding S.K., the social worker noted that she asked maternal grandmother if she had other family. Maternal grandmother said that she was originally from Russia and had no family in the United States, except for her eldest daughter (maternal aunt) who lived with her. Maternal grandmother also said that Mother's father (maternal grandfather) lived somewhere on the East Coast but that she did not have any contact information for him or his family. There is no indication in the record that the Agency ever asked maternal grandmother or maternal aunt about the children's potential Native American ancestry.

In the Agency's jurisdiction/disposition report regarding S.K., the social worker noted that Mother mentioned a half-sister who lived in Las Vegas. Mother said that maternal grandfather was "abusive" and "a drunk," and she

4

denied having any other relatives to consider for the children's placement. The social worker also noted in the report that Father was still legally married to another woman (the children's stepmother). The report again stated that ICWA did not apply. There is no indication in the record that Mother's half-sister or Father's legal wife were ever asked about the children's potential Native American ancestry.

At a pretrial conference, the juvenile court again asked Mother whether she had any Native American ancestry, and she again said that she did not. Father's attorney also reiterated that Father denied having any Native American ancestry.

In the Agency's April 2022 addendum report regarding both children, the social worker intern noted that she attempted to contact maternal grandmother about ICWA and left a voicemail. There is no indication in the record that maternal grandmother ever responded to the ICWA inquiry or that the Agency ever followed up with maternal grandmother about ICWA. The social worker intern also noted that she called paternal grandmother and paternal grandfather to conduct ICWA inquiries. Paternal grandfather (who lives in Florida) denied any Native American ancestry on his side of the family but stated that he did not know about Mother's side. Paternal grandmother (who lives in New York) also denied having any Native American ancestry.

At the April 12, 2022 jurisdiction and disposition hearing, the court sustained the Agency's petitions regarding both children, removed the children from parental custody, and again found without prejudice that ICWA did not apply. Mother and Father timely appealed from those orders.

III.

DISCUSSION

Mother and Father contend that the juvenile court erred by finding ICWA inapplicable before the Agency had completed its initial inquiry. They raise no other appellate issue concerning the jurisdiction and disposition orders they are appealing. The Agency implicitly concedes that its ICWA inquiry was deficient but contends that the error was harmless and thus, does not require reversal and remand. We agree with the Agency. Although we conclude that the Agency's initial inquiry under ICWA was deficient, the error was harmless, and we affirm.

A. *ICWA Inquiry Duties, Generally*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice

6

requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*) [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

B. *Initial Inquiry*

The first stage of initial inquiry " 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049.) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].)

Mother and Father identify several inquiries they contend the Agency failed to make as part of its initial inquiry under ICWA. First, they contend that the Agency failed to ask maternal grandmother if she has Native American ancestry; failed to ask maternal grandmother for the contact information for maternal aunt, with whom the Agency should have conducted

7

an ICWA inquiry; and failed to ask maternal grandmother for the "names and contact information for any other children" who, if they exist, should have been asked about the children's potential Native American ancestry. Mother and Father also complain that the Agency failed to ask Mother for her half-sister's contact information. They further contend that the Agency should have asked Mother's half-sister about the children's potential Native American ancestry and for the names and contact information for all maternal extended family members.

We agree that the initial inquiry is incomplete as to maternal grandmother and maternal aunt. The record indicates that maternal grandmother was in regular contact with the Agency and that maternal aunt and maternal grandmother lived together. The Agency could have and should have asked maternal grandmother if she has Native American ancestry, and the Agency could have and should have obtained maternal aunt's contact information and conducted the same inquiry with her.

We do not agree, however, that the Agency should have inquired of Mother's half-sister (the children's half-aunt). Half-aunts are not "extended family members" under ICWA. We also do not agree that the Agency should have asked maternal grandmother for the names and contact information of "any other children." There is no suggestion in the record that maternal grandmother had other children. Rather, maternal grandmother stated that she had no other family in the United States besides maternal aunt.

Next, Mother and Father contend that, although the Agency properly asked paternal grandparents about the children's potential Native American ancestry, the Agency failed to confirm whether paternal grandparents—who live in two different states—are "two separate sets of grandparents" or instead, are married. Mother and Father also complain that the Agency

should have asked paternal grandparents and Father for the names and contact information for any other paternal extended family members.

We agree that the Agency should have asked paternal grandparents and Father for the names and contact information for any other paternal extended family members, who then should have been asked about the children's potential Native American ancestry. But the prospect that any such relatives exist appears unlikely. Indeed, the only indication in the record that the children might have other paternal relatives is Father's vague and confusing text message that the children have all of "their aunts and uncles brothers and sisters mothers and fathers . . . ."

The Agency did not err, however, by failing to inquire whether paternal grandparents are married or re-married. Such an inquiry would reveal only whether the children have stepgrandparents, and stepgrandparents are not "extended family members" under ICWA. (See 25 U.S.C. § 1903(2).)

Mother and Father next complain that the Agency should have asked Father for his legal wife's contact information and should have conducted an ICWA inquiry with her. Mother and Father further contend that the Agency should have conducted an ICWA inquiry with Father's mother-in-law (the mother of Father's legal wife). Because Father's legal wife is the children's stepmother, we agree that she qualifies as an "extended family member" under ICWA and should have been asked about the children's potential Native American ancestry. (See 25 U.S.C. § 1903(2).) The Agency was not required, however, to conduct an ICWA inquiry with Father's mother-in-law. Stepgrandparents are not "extended family members" under ICWA.

For the previous reasons, we conclude that the Agency's initial inquiry fell short of ICWA's requirements and that the juvenile court erred by failing to ensure that a sufficient initial inquiry took place before determining that

9

ICWA did not apply. (25 U.S.C. § 1903(2); § 224.1, subd. (c); *D.S.*, *supra*, 46 Cal.App.5th at pp. 1048–1049; see *In re Josiah T.* (2021) 71 Cal.App.5th 388, 403–404 (*Josiah T.*) [agency's "initial inquiry was inadequate," where "[d]espite having four paternal family members . . . potentially available to consult about American Indian ancestry," agency did not ask paternal grandmother until 18 months after the petition or other paternal relatives until later]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 (Y.W.) ["[T]he point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child [is] to obtain information the parent may not have."].)

C. *Harmless Error*

Next, we consider the appropriate remedy. Mother and Father contend that the initial inquiry error was prejudicial and requires reversal. The Agency, on the other hand, contends the error was harmless. We agree with the Agency and therefore affirm.

There is a split of authority in the California courts of appeal as to the proper standard for prejudicial error under ICWA. (See *Dezi C.*, *supra*, 79 Cal.App.5th at pp. 777–782 [discussing the "continuum" of three rules for "assessing whether a defective initial inquiry is harmless" (" 'automatic reversal,' " " 'readily obtainable information,' " and " 'presumptive affirmance' ") and proposing a fourth (" 'reason to believe' ")].) Because the California Supreme Court has yet to resolve this split, we recently evaluated each of these approaches in *In re Y.M.* (Sept. 2, 2022, D080349) __ Cal.App.5th __ [2022 WL 4007600] (*Y.M.*)). For the same reasons discussed in *Y.M.*, we again decline to apply the presumptive affirmance approach (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431), the automatic reversal approach (*Y.W.*, *supra*, 70 Cal.App.5th at p. 556 and *In re Antonio R.*

10

(2022) 76 Cal.App.5th 421, 432–437), or the reason to believe approach (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 779), and instead, apply the readily obtainable information approach set forth in *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744. (See *ibid.*)

In *Benjamin M.*, the agency could not locate the minor's father and did not obtain any information about Native American ancestry from the minor's paternal side. Although the agency had access to the father's brother and sister-in-law, it failed to ask them about potential Native American ancestry. In concluding that this error was prejudicial, the appellate court reasoned that the missing information was "readily obtainable" and "likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Here, inquiry of maternal grandmother, maternal aunt, and Father's legal wife may be readily obtainable but is unlikely to "bear meaningfully" on whether the children are Indian children under ICWA. Although the Agency failed to specifically ask maternal grandmother if she had Native American ancestry, maternal grandmother all but answered this question by stating that she was originally from Russia and had *no family* in the United States, besides her eldest daughter.

Mother and Father posit that maternal grandmother's Russian relatives could have been among the Russians who laid claim to parts of California in the 1800's. Their improbable theory suggests that these Russian relatives might have born one or more children with California Native Americans and taken those children to Russia, creating the potential for Native American ancestry on maternal grandmother's side. We are not persuaded. Such a scenario is fantastical, at worst, and highly speculative, at best. (See *In re G.A.* (2022) 81 Cal.App.5th 355, 365 [rejecting mother's

11

similarly speculative argument that, although her father's birth in Mexico made it " 'unlikely that he can trace his ancestry back to a federally recognized tribe' . . . 'it is possible' that her father's parents were born in the United States because several tribes 'straddle the border' "].)  Thus, we cannot say that remanding this matter to allow the Agency to specifically ask maternal grandmother if she has Native American ancestry is likely to shed meaningful light on whether the children are Indian children.  For the same reason, an ICWA inquiry with maternal aunt is unlikely to provide useful information.  Indeed, Mother's consistent denial of any Native American ancestry on her side makes such an inquiry even less likely to be fruitful.

It is also improbable that Father's legal wife could offer meaningful information on the children's potential Native American ancestry, particularly considering that Father and his parents have consistently denied any such ancestry.  For the same reasons, inquiry of other potential paternal extended relatives—to the extent they even exist and are available to the Agency—is also unlikely to bear meaningfully on this question.  Accordingly, we conclude that the inquiry error was harmless and affirm.  (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

DISPOSITION

The orders are affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


DATO, J.